## The Quaker City.

*(District Court, S. D. New York.  January 10, 1884.*

COLLISION—OLD BOATS—REPAIRS—EXCESSIVE DEMANDS—COSTS.

> Where a steam-tug maneuvering in a slip rubs against or strikes a barge moored at the wharf with unjustifiable force, she is chargeable with the damages properly attributable to her negligent act, though the boat struck was old and weak. In dealing with old boats, however, the repairs made should be closely scrutinized to prevent imposition, and nothing allowed for repairs beyond those made necessary by the blow. In this case but one-third of the claim allowed, and costs denied.

In Admiralty.
*J. A. Hyland*, for libelant.
*Owen & Gray*, for claimants.

BROWN, J. On May 18, 1881, the canal-boat Shady Run lay in the slip on the north side of the pier at the foot of Fortieth street, North river, discharging a cargo of ice. Her bows lay to the westward and about 12 feet inside of the end of the pier. At about 7 o'clock of that morning the steam-tug Quaker City, with the canal-boat L. D. Cummings lashed upon her starboard side and projecting somewhat ahead of the tug, came down the river and into the slip for the purpose of landing her along-side and outside of the boat next to the Shady Run. Owing to the shallow water, as stated by her pilot, the tug and tow not obeying the helm as usual, the stem of the Cummings struck the starboard bow of the Shady Run and inflicted some damage, on account of which this libel was filed. The claimants do not deny that the Cummings hit the Shady Run, but allege that it was but a slight blow or rub, such as is usual in the landing of canal-boats, and that the damage to the Shady Run arose from her rotten and unseaworthy condition.

Without going into the details of the evidence, there are various circumstances which satisfy me that the blow was one of more violence than the claimants' witnesses acknowledge, and that the claimants must be held responsible for the damages properly arising therefrom. The chief difficulty arises from the contradictory evidence in regard to the sound or rotten condition of the Shady Run. Complaint being made the same day by the owner of the canal-boat at the claimants' office, their agent and the captain of the Quaker City, on the afternoon of the same day, examined the bows of the Shady Run to ascertain the damage. They testify that no damage was visible on the outside; that on going down the hatch, inside the boat, with the owner, one beam was found loose or broken, and that the captain, on taking hold of it with the hand, pulled off a handful of rotten wood and showed it to the owner. The latter denies that any such circumstance occurred, or that the timbers were at all unsound or rotten. The evidence on the part of the canal-boat, including her owner and captain, and the carpenter who did the repairs on her, shows that from six to seven planks on her starboard bow were broken, each about six feet long, and one plank 16 feet long. The carpenter states that the repairs which he did were to renew the plank specified; to put in one new timber, about six or eight feet in length; to brace two adjoining ones; and he testified that the timber taken out was sound. He also put in a new bumper along the bow, and one new plank upon the deck.

Upon the evidence it is very difficult to form any satisfactory conclusion with regard to the seaworthy condition of the Shady Run. The fact that she brought a considerable cargo of ice, and without much leakage, if the testimony is to be believed, has considerable force. I can only repeat what was said in the recent case of *The Syracuse*, 18 FED. REP. 828, that the claimants should have procured further evidence than that of interested witnesses, if they intended

to rely for their defense upon the fact that the Shady Run was so rotten and unseaworthy as not to be entitled to any recovery. Having, as I must find, hit her bows with a blow more violent than justifiable in the ordinary handling of boats, whether new or old, I think she must be held answerable for the damage properly attributable to that negligent act, though the boat were old or weak. *The Granite State,* 3 Wall. 310. *The Syracuse, supra.*

The evidence satisfies me, however, that the repairs in this case went far beyond the natural effects of such a blow, even if the canalboat was not staunch enough to resist ordinary handling. The bill of items of the repairs done shows nearly 800 feet of timber and plank used in these repairs, with numerous other items in proportion. This, as appears from the examination of the carpenter, was sufficient for many times the amount necessary to replace and repair the broken and injured parts.

The captain and agent of the claimants testify that on visiting the ship-yard while the repairs were going on they found the whole bow of the canal-boat taken out and in course of repair. This is denied by the carpenter and the owner of the boat. I am entirely satisfied from the evidence that the repairs were very greatly in excess of the injury done. The evidence is perhaps insufficient to determine exactly the proper amount. I shall allow provisionally what I gather from the present evidence, viz.: one-third of the bill of repairs; onethird of the demurrage claimed; one-half the amount claimed for the broken lines; and the whole of the bills for towage and dockage, as they would have been necessary in any event. These together amount, with interest to date, to $72.20, for which a decree may be entered, but without costs, as the amount of repairs claimed is evidence of bad faith on the part of the libelant; except, however, that if either party is dissatisfied with my estimate of the damages, they may take an order of reference to compute the amount, at the risk of paying the expenses of the reference if not successful in obtaining a more favorable result.